ORIGINAL                                                      ORIGINAL

Robert J. Beles bar No. 41993
Paul McCarthy bar no. 139497
One Kaiser Plaza, Suite 2300
Oakland, California 94612-3642
Tel No. (510) 836-0100
Fax. No. (510) 832-3690

Attorney for *Petitioner*
STEVEN ALLEN JONES

## United States District Court
### Eastern District of California

| | |
|---|---|
| STEVEN ALLEN JONES, | No.  2:10-cv-00196-MCE-GGH |
| *Petitioner*, | REPLY MEMORANDUM IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS |
| vs. | |
| MIKE MCDONALD, Warden, High Desert State Prison, Susanville, California, | |
| *Respondent*. | |
| PEOPLE OF THE STATE OF CALIFORNIA, | |
| *Real Party in Interest*. | |

**REPLY MEMORANDUM IN SUPPORT OF
PETITION FOR WRIT OF HABEAS CORPUS**

# TABLE OF CONTENTS

*item*                                                                              *page number*

REPLY MEMORANDUM IN SUPPORT OF PETITION FOR WRIT OF
HABEAS CORPUS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    1.  Where the only evidence implicating petitioner in the crimes was the
uncorroborated testimony of an accomplice, and an eyewitness identified the
accomplice's uncharged associate as the guilty party, petitioner's conviction was
fundamentally unfair and violated his right to a fair trial in violation of his right
to due process of law under the Fourteenth Amendment to the United States
Constitution.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

        a.  Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

        b.  DNA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        c.  Text messager. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        d.  Lyntasha Barrett. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        e.  Petitioner's travels outside of California... . . . . . . . . . . . . . . . . . . . . . . 7

    2.  Where the evidence clearly showed that there was only one triggerman, trying
petitioner as the triggerman after Gordon had already been prosecuted on the
theory that he was the triggerman violated petitioner's right to due process... . . . . . . 8

    3.  Defense counsel was ineffective in failing to object to the proposed use of
Gordon's trial testimony on Crawford grounds.. . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    4.  Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

ORIGINAL                                                                                    ORIGINAL

# TABLE OF AUTHORITIES

*cases*                                                                                    page number

*Crawford v. Washington* (2004) 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177. . . . . . . . . 9

*Earp v. Ornoski*, 431 F.3d 1158 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Estelle v. McGuire*, 502 U.S. 62, 116 L. Ed. 2d 385, 112 S. Ct. 475 (1991) . . . . . . . . . . 1, 2

*Haynes v. Cupp*, 827 F.2d 435 (9th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Hicks v. Oklahoma*, 447 U.S. 343, 65 L. Ed. 2d 175, 100 S. Ct. 2227 (1980) . . . . . . . . . 1, 2

*In re Sakarias* (2005) 35 Cal. 4th 140. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Laboa v. Calderon*, 224 F.3d 972 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

*Lisenba v. California*, 314 U.S. 219 (1941),. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Lockyer v. Andrade*, 538 U.S. 63, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). . . . . . . . . . 12

*Napue v. Illinois*, 360 U.S. 264, 3 L. Ed. 2d 1217, 79 S. Ct. 1173 (1959). . . . . . . . . . . . . 8

*Smith v. Groose*, 205 F.3d 1045 at 1051-1052 (8th Cir. 2000).. . . . . . . . . . . . . . . . . . . . 8

*Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . 12

*Teague v. Lane*, 489 U.S. 288 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Thompson v. Calderon*, 120 F.3d 1045 (9th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . 8

*Townsend v. Sain*, 372 U.S. 293, 83 S. Ct. 745, 9 L. Ed. 2d 770 (1963).. . . . . . . . . . . . . 12

*United States v. Necoechea*, 986 F.2d 1273 (9th Cir. 1993.). . . . . . . . . . . . . . . . . . . . . . 1


*statutes and rules*                                                                       page number

California Evidence Code section 1111 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

United States Constitution, Fourteenth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 8

1

United States District Court
Eastern District of California

2

3   STEVEN ALLEN JONES,                          No.

4              *Petitioner*,                      REPLY MEMORANDUM IN SUPPORT OF
          vs.                                     PETITION FOR WRIT OF HABEAS
                                                  CORPUS
5   MIKE MCDONALD, Warden, High Desert
6   State Prison, Susanville, California,

7              *Respondent*.

8   PEOPLE OF THE STATE OF CALIFORNIA,

9              *Real Party in Interest*.

10
                    **REPLY MEMORANDUM IN SUPPORT OF
11                  PETITION FOR WRIT OF HABEAS CORPUS**

12          **1. Where the only evidence implicating petitioner in the crimes was the
            uncorroborated testimony of an accomplice, and an eyewitness identified
13          the accomplice's uncharged associate as the guilty party, petitioner's
            conviction was fundamentally unfair and violated his right to a fair trial in
14          violation of his right to due process of law under the Fourteenth Amendment
            to the United States Constitution.**

15
                              **a.  Introduction**
16

17          Beginning on page 12 of its memorandum, respondent presents a long and ultimately

18   pointless discussion about how California's accomplice corroboration rule is not required by the

19   federal constitution, as if this was the issue petitioner had raised in his petition.  Respondent has

20   mistakenly attempted to refute an argument petitioner did not make. Petitioner did not argue

21   that accomplice corroboration is a requirement of federal constitutional law [1] , and in fact

22   specifically stated that "the corroboration rule is not required by the Constitution or federal

23   ────────────────────────────────

24   [1] *Lisenba v. California*, 314 U.S. 219, 226 (1941), cited by respondent on page 13 of respondent's
     memorandum, holds essentially the same thing, but this is not the issue petitioner raised.  Respondent
25   continues its straw man argument for several additional pages, culminating in an argument that
     petitioner is attempting to create a new rule of constitutional law that accomplice testimony must be
26   corroborated, citing *Teague v. Lane*, 489 U.S. 288 (1989).  All of this is irrelevant and a waste of the
     court's time. Petitioner's argument is actually based on *Hicks v. Oklahoma*, 447 U.S. 343, 346, 65 L. Ed.
27   2d 175, 100 S. Ct. 2227 (1980) and *Estelle v. McGuire*, 502 U.S. 62, 72-73, 116 L. Ed. 2d 385, 112 S.
     Ct. 475 (1991) "old law" predating petitioner's November 2004 trial by twenty-four years and thirteen
28   years, respectively!

                                              1

law." *United States v. Necoechea*, 986 F.2d 1273, 1282 (9th Cir. 1993.)"  (Initial memorandum at m-3.)

The issue petitioner actually raised was that California had deprived petitioner of his right to fundamental fairness and due process by arbitrarily depriving him of a state law entitlement.

> ". . . the federal court can grant habeas relief for a conviction based on the uncorroborated testimony of an accomplice if this violates the petitioner's due process right to fundamental fairness. *Laboa v. Calderon*, 224 F.3d 972, 979 (9th Cir. 2000), citing *Estelle v. McGuire*, 502 U.S. 62, 72-73, 116 L. Ed. 2d 385, 112 S. Ct. 475 (1991). "A State violates a criminal defendant's due process right to fundamental fairness if it arbitrarily deprives the defendant of a state law entitlement." *Laboa v. Calderon, id*, citing *Hicks v. Oklahoma*, 447 U.S. 343, 346, 65 L. Ed. 2d 175, 100 S. Ct. 2227 (1980)."

Petitioner's initial memorandum at m-3.

As discussed in the initial memorandum. the Ninth Circuit, in *Laboa v. Calderon*, indicated that in a proper case, a denial of corroboration could be an arbitrary denial of a state law entitlement under *Hicks v. Oklahoma*. The Ninth Circuit did not find such an arbitrary deprivation in *Laboa* because the accomplice's testimony was, in fact, corroborated by the defendant's own admissions.

In *Laboa*, four individuals were implicated in a robbery-murder – Laboa, Denney, Carl and Keener.  At Laboa's trial, Keener testified:

> "that Laboa was present during the initial planning of the robbery, when they had all four agreed to the robbery; that he traveled with the others to the victim's house and waited outside while Keener engaged in intercourse with the victim; that he entered the house with Denney and Carl; that he was helping Keener search for the victim's money in the bedroom when Denney and Carl were tying the victim up in the bathroom, and when Denney actually shot the victim; that he fled with the rest of his accomplices immediately after the murder; and that he helped to dispose of the evidence and to divide the proceeds of the robbery."

*Laboa v. Calderon*, 224 F.3d at 977.  Police surreptitiously recorded a conversation between Laboa and Denny in a police van after their arrest.  The Ninth Circuit summarized Laboa's admissions as follows:

> "The tape contained several statements indicating that Laboa believed that he would be found guilty.
>
> > ['We're gone, Holmes, we're gone with the wind buddy. . . .'; 'They got us dead and gone . . . .'; 'I'm just as guilty as you are.']

Laboa also made statements on the tape describing his activities in the robbery, of

2

which Denney was unaware.

> [Laboa: '[The police] knew about where we threw beer bottles out, the gas station where I threw the [expletive] bank book in the trash. How did they know about that?' Denney: 'I didn't even know about that.']

And perhaps most importantly, the tape contained statements that disclosed Laboa's specific intent to rob the victim, not just sell him guns, which countered Laboa's defense that he did not know that a robbery was going to take place.

> [Laboa told Denney to argue that the rope they brought to tie the victim up indicates that they intended merely to rob the victim, not murder him: Denney:  'I'll tell 'em, you know, I shot him and it was an accident. You just got to back my play. Say "Hey man, nobody said anything about shooting anybody."' Laboa: 'Hey, well, all you gotta say was, "Hell, we had the [expletive] thing to tie him up," you know, they know we had that.']

*Laboa v. Calderon*, 224 F.3d at 977.

At another portion of the tape, Laboa told Denny he was going to testify as follows:

> "[Denney went] in the house and I stayed outside and waited a minute to make sure no one was coming. When I went in, when I went in, you guys, I don't know where you were. I went to, uh, I was walking down the hall and I seen Michelle in the bedroom. I turned in the bedroom and started, uh, she was getting dressed and I looked around for some money and she handed me a thing with money. . . . It wasn't hardly no money. And the gun went off, I heard a gun go off and I just said, "[Expletive], let's get the [expletive] out of here." And I ran out and that's all I know. I, I didn't have a gun. OK? . . . You know what I'm saying, I didn't see the dude . . . . I didn't see you in there."

*Laboa v. Calderon*, 224 F.3d at 980.  In ruling that there was no arbitrary denial of a state law entitlement,   the Ninth Circuit noted that California Evidence Code section 1111 bars convictions based on an accomplice's testimony unless that testimony is "corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense." *Laboa v. Calderon*, 224 F.3d at 979, but concluded, in essence, that Laboa had admitted being involved in the crime and corroborated some of the details of the crime that the accomplice had testified to. *Laboa v. Calderon*, 224 F.3d at 979-980.

As of October 4, 2010, there are no further cases from the Ninth Circuit about when a California appellate court's failure to follow section 1111's accomplice corroboration requirement would constitute an arbitrary denial of a state law right.  The only guidance this court has is that the situation in *Laboa v. Calderon* was not an arbitrary denial of section 1111 because, in fact, the state courts complied with that section.

ORIGINAL                                    ORIGINAL

The present case is, of course, completely unlike *Laboa v. Calderon*, where the defendant's admissions corroborated much of the accomplice Flanagan's testimony.  Here, there were statements from petitioner at all.  Here, the only evidence connecting petitioner to the crime, let alone putting the gun in his hand, was Flanagan's testimony.  But this was not all – the main eyewitness to the shooting, Ian Gonzalez, identified a close associate of Flanagan's, Dwane Williams, as the fourth robber and triggerman, and was unable to identify petitioner at all.  (RT. vol 3. pp. 849, 863-864, vol. 4 p. 901; RT. vol. 5, p. 1260.)  Under these unusual circumstances, convicting petitioner absent independent evidence connecting him to the crime as State law required violateed the petitioner's due process right to fundamental fairness.

An assortment of scraps of evidence have been proposed as the missing corroboration of Flanagan's testimony against petitioner, but the evidence either did not vcoproposals either connected petitioner to the crime,

### b.  DNA

Consider the DNA, the "star" of the prosecution's so-called corroborative evidence.  The DNA was not found on the gun, or on the surface of some fixed object in Trinity County, like the handle of the restroom door at the rest stop where Gonzalez and the decedent met the robbers.  It was found in the robbers' car and on some bits of clothing found in the car.  The transcript of the trial is remarkably free of details about what else might have been found in the car.  This court cannot tell from the record whether the car  was pristine clean with only a few items in it, or whether it was crammed full of the assorted leftover junk of a dozen different passengers. However, this court can at least tell that the clothing – a head wrap and baseball cap – was clearly ***shared*** clothing, not items personal to petitioner, as respondent mistakenly states on page 19 of its brief.  Nicole Inacio, the DNA criminalist, testified that the head wrap contained DNA of petitioner ***and two unknown males***, (RT. vol. 7 pp. 1899 and 1900), and the baseball cap containing DNA of  petitioner ***and two unknown males***, (RT. vol. 7 pp. 1904 to 1906.)  This headgear might have been left in the car by whoever first owned it, to be carelessly worn by whoever might have been riding in the car afterwards when a hat was needed.  Ms. Inacio could not tell whose DNA was the most recent.

ORIGINAL                                                                                          ORIGINAL

Ms. Inacio also testified about a stain on the rear passenger seat, perhaps blood, that contained only petitioner's DNA.   (RT. vol. 7 pp. 1882 and 1883.) But this stain was almost certainly not left at the time of the crime, since there was absolutely no testimony by anyone that any of the four robbers suffered any injuries whatsoever. This stain suggests that petitioner might have personally been in the car, but less so than a fingerprint of petitioner's would have done, had a fingerprint been found inside the car, since the stain could have been transferred from the cap or head wrap.  At most, the stain on the seat suggests that petitioner was in the car at some time.  That could have been at any time, testified Ms. Inacio, since it was not possible to estimate the age of the DNA sample. [2]

Clearly, the only effect of the DNA evidence was to cast a cloud of pseudoscientific mummery over Flanagan's testimony.  What it did show, that petitioner might have been in the car at some time, is without evidentiary value.  That petitioner might have been in the car at some time does not tend to show that he was in the car at any particular time, such as the robbery.

### c.  Text messenger

Respondent argues that petitioner's personal text messenger [3] was also found in the car. Respondent is mistaken.  Police recovered the following telephonic devices:

1.  A cell phone belonging to Inez Taylor, a Richmond female.

2.  A cell phone apparently belonging to Flanagan's brother, "Peon" or "Teon" Flanagan.

3.  Two cell phones that were registered to false accounts.  The subscriber's names

---

[2] On page 19 of its brief, respondent argued that the "evidence" at trial showed that the only time petitioner ever was in the car was when the robbers drove to Eureka and then on to the crime scene and that petitioner did not "refute" this "evidence."  The so-called "evidence" respondent refers to in this obfuscatory manner is the Flanagan's testimony that petitioner was never in the car!  Corroboration cannot be bootstrapped in this manner – it must connect the defendant to the crime independently, without the assistance of any testimony from the accomplice.  See, e.g., *People v. Luker* (1965) 63 Cal.2d 464, 469.  (Moreover, independent evidence suggests that all kinds of people had been in the car, whatever Flanagan said – the various unidentified people who also left their DNA on the ball cap and head scarf, and the various owners of the telephonic devices found in the car.)

[3] The only evidence that Sonia Stevenson's text messenger belonged to petitioner was, again,  Flanagan's bare testimony.  This is more bootstrap corroboration.

1  may have been pseudonyms or possibly the phones had been stolen.

2      4.  A text message device registered to Sonia Stevenson, a Richmond female.

3      Three of the cell phones were in Flanagan's personal possession when he was arrested.
4  The record is unclear which ones.  At least one of the phones and the text messager had the
5  phone number for someone named "Steve O" stored in their memory.  It is unclear whether the
6  phone number for "Steve O" was the number for any of the recovered telephonic devices.  There
7  was speculation that 'Steve O." was really petitioner, but petitioner's last name does not begin
8  with the letter O and there was no evidence that the number listed as belonging to Steve O. was
9  for a telephone account of petitioner's.  Phone calls had apparently been made between the
10 phones, but there was no evidence that there had been any text calls between the text messager
11 and one or more of the phones.    (RT. vol. 6 pp. 1636 to 1640.) No one testified that
12 petitioner's fingerprints or DNA was found on any of the telephonic devices.  There was not
13 even any testimony that petitioner was acquainted with either of the two females and thus might
14 have borrowed the phone or text messager. (Unlike the two cell phones mentioned above, there
15 was no evidence that Ms. Stevenson was anything less than a real person who really had an
16 account for the text messager.)

17     All these telephonic devices show is that Flanagan had collected some phones for his own
18 use and a couple of women, Ms. Taylor and Ms. Stevenson, had possibly left their phone and
19 text messager in the car when they were riding in it.  Indeed, one could have offered an
20 argument that was just as valid as the DNA evidence – that the presence of the phone and text
21 messager "proved" that either Ms. Taylor or Ms. Stevenson was the fourth robber, just as the
22 presence of the baseball cap and head scarf "proved" that petitioner was the fourth robber.
23 Unfortunately, those pesky eyewitnesses insisted that the fourth robber was a man and not a
24 woman.  But then, Ian Gonzalez insisted that the fourth robber was Dwayne Williams and not
25 petitioner, didn't he?

26                          **d. Lyntasha Barrett**

27     Respondent argues that "Lyntasha Barrett testified that she identified Steven and David
28 from a photographic lineup" as people she'd seen in a bar in Eureka on the night before the

6

shooting. (Respondent's brief, page 18.) This is false. Ms. Barrett testified exactly the opposite! In her brief testimony, Ms. Barrett said that the detective showed her four photos and that she was unable to identify *any* of them as people she'd seen in Eureka. She testified that she told the detective that she'd seen someone with eyes similar to those of David Jones' photo, and she'd seen someone with braids similar to those in petitioner's photo. Ms. Barrett didn't testify that the eyes and braids in the photos were particularly distinctive and did not describe the eyes and braids in any greater detail. She didn't even testify that the fellow with the eyes and the fellow with the braids were together in the bar. (RT. vol. 6, p. 1613 and 1614.) Ms. Barrett, in fact, was unable to identify either petitioner or David Jones in court. (RT. vol. 6 pp. 1619 and 1620.)

Of course, Eureka was not the scene of the crime, but approximately sixty miles away. Other than Flanagan's testimony, there was no direct evidence that petitioner had ever been in Eureka, let alone the night before the shooting. But even if he had been in Eureka that night, this would in no way tie him to a robbery-murder near Weaverville. According to Flanagan, he and the three other robbers had originally driven to Eureka from the Bay Area to attend a rap concert there. A number of other people had done so as well, including some of the performers. Would every black man who attended the rap concert in Eureka also be a suspect in the shooting? Is society to round up every black man within a sixty mile radius whenever a crime is reported whose participants were blacks?

### e. Petitioner's travels outside of California.

Respondent finally argues that the jury could consider petitioner's travels outside of California as evidence that he fled to avoid prosecution for the robbery-murder and thus showed a "consciousness of guilt" for the crime. As already noted in the initial memorandum, the jury was specifically instructed not to consider the evidence for such a purpose. The trial court instructed the jury that it could only consider the evidence that petitioner had been outside of California to explain why Detective Nawrock arrested him in Henderson, Nevada. (Initial memorandum, p-11, citing record at RT. v. 6 p. 1571 to 1573; m-9.) Thus, the jury could not have lawfully considered this evidence as corroboration of Flanagai's testimony implicatiing him in the crime, and neither can respondent.

7

**2.  Where the evidence clearly showed that there was only one triggerman, trying petitioner as the triggerman after Gordon had already been prosecuted on the theory that he was the triggerman violated petitioner's right to due process.**

In *Napue v. Illinois*, 360 U.S. 264, 3 L. Ed. 2d 1217, 79 S. Ct. 1173 (1959), the U.S. Supreme Court held that the government's knowing presentation of false testimony is a violation of a defendant's right to due process under the Fourteenth Amendment to the U.S. Constitution. In *Thompson v. Calderon*, 120 F.3d 1045, 1058 (9th Cir. 1997), the en banc Ninth Circuit held that this duty not to knowingly present false testimony means that "when no new significant evidence comes to light a prosecutor cannot, in order to convict two defendants at separate trials, offer inconsistent theories and facts regarding the same crime." *Thompson, id*, citing *Haynes v. Cupp*, 827 F.2d 435, 439 (9th Cir. 1987).

Relying on *Thompson*, the California Supreme Court, in *In re Sakarias* (2005) 35 Cal. 4th 140, held:

> "...fundamental fairness does not permit the People, without a good faith justification, to attribute to two defendants, in separate trials, a criminal act only one defendant could have committed. By doing so, the state necessarily urges conviction or an increase in culpability in one of the cases on a false factual basis, a result inconsistent with the goal of the criminal trial as a search for truth."

*In re Sakarias*, 35 Cal. 4th at 155-156.

Respondent, in essence, argued that the prosecution, having been unsuccessful in prosecuting Gordon on the triggerman theory, were free to prosecute petitioner as the triggerman.  But this is not a correct statement of the law.  The rule not only bars the "obtaining" of convictions but the "seeking of convictions" on inconsistent theories.  *In re Sakarias*, 35 Cal. 4th at 158, citing *Smith v. Groose*, 205 F.3d 1045 at 1051-1052 (8th Cir. 2000)

*In re Sakarias* stated that "a significant change in the available evidence" following the first trial could supply the "good faith" needed to justify the use of inconsistent theories in successive trials, but the court made it clear that the "change" could not be caused by a "strategic decision" of the prosecution. *In re Sakarias*, 35 Cal. 4th at 162.

Here, the evidence clearly showed that there was one and only one triggerman.  The prosecution first tried Gordon for the robbery-murder on the theory that he was the triggerman, based on his alleged confession to the jailhouse informant, Waxler.  At the time of Gordon's

8

trial, the prosecution would have known that Flanagan had previously made statements to detective Nawrock implicating petitioner as the triggerman.  After the jury failed to convict Gordon of being the triggerman, the prosecution elected to withhold Waxler's testimony and proceed on Flanagan's. The only "new evidence" was their lack of success in prosecuting Gordon as the triggerman.  The prosecution clearly relied on "strategic decisions" in basing successive prosecutions on the inconsistent testimony of Waxler and Flanagan, but the prosecution blocked petitioner from introducing Waxler's prior testimony in his own defense.

### 3.  Defense counsel was ineffective in failing to object to the proposed use of Gordon's trial testimony on Crawford grounds.

When defense counsel proposed to introduce Waxler's trial testimony or call Waxler as a live witness to testify that Gordon had confessed to being the triggerman, the prosecution asked to be allowed to introduce Gordon's trial testimony to show that Gordon had denied being the triggerman and had accused petitioner of being the triggerman.  Defense counsel failed to object to the proposed use of Gordon's trial testimony as prohibited "testimonial hearsay" under *Crawford v. Washington* (2004) 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177.  Under *Crawford*, testimonial hearsay is inadmissible at trial unless the defendant has had a prior opportunity to cross-examine the witness.  Although the Supreme Court has not yet defined the outer boundary of "testimonial hearsay", actual prior trial testimony is unquestionably "testimonial hearsay" under *Crawford*.

The Court of Appeal, however, held that trial counsel's decision not to call Waxler as a witness was not based on the trial court's ruling that it would allow the introduction of Gordon's trial testimony, because the trial court ruled that it would only allow the prosecutor to introduce Gordon's trial testimony if the defense presented Waxler's trial testimony instead of calling Waxler as a live witness, and Waxler was available in court to testify..  The Court of Appeal then suggested that trial counsel did not call Waxler,  "presumably concluding" that Waxler would be impeached on cross-examination, albiet not by Gordon's trial testimony.  (See respondent's brief, quoting the portion of the Court of Appeal's opinion at p. 42.)

The Court of Appeal's decision, however, was apparently based on an error in summarizing the portion of the transcript in which the court's ruling regarding Gordon's prior testimony occurred.  This is what actually happened:

The Court:          "Your pleasure, Mr. Webster, at this point."

Mr. Webster:        "Well, I haven't made a final decision as to Mr. Waxler, who's sort of taken it out of my hands at the moment. He's still not arrived. So I am bereft of witnesses to call."

The Court:          "Well, if it makes any difference, since this morning I did look at 356 and 1202 again, my ruling will be that Mr. Waxler testifies. Or if his statement comes in by way of his transcript from the prior hearing, I will allow the People to bring in Mr. Gordon's testimony and each and every aspect that denies or contradicts what Mr. Waxler stated Mr. Gordon told him. And that will include, for impeachment purposes, the allegation by Mr. Gordon that Steve Oo.[4] was the shooter, because that is inconsistent with what was stated on previous occasions."

Mr. Webster:        "Well – "

The Court:          "So if that makes a difference."

Mr. Webster:        "It does make a difference. And I disagree with the court's ruling. I think that either I'm entitled to -- well, either party is entitled to get in only statements against interests, particularly penal interests, that anything going beyond that is violative of the general hearsay rule and exception. And based on the court's ruling, I would not be calling Mr. Waxler, and we would be resting."

The record shows that the  trial court rather clearly ruled that, whether Waxler testified live or whether the defense presented the transcript of his prior testimony, it would allow the prosecution to introduce any portion of Gordon's trial testimony that contradicted Waxler's statement, including Gordon's testimony that "Steve Oo was the shooter," that defense counsel stated on the record that "based on the court's ruling, he would not be calling Mr. Waxler" and even that defense counsel was expecting Mr. Waxler to arrive, but he had not yet arrived. Thus, from the face of the record, it is clear that defense counsel made a decision not to "call" Mr.

---

[4] The record is unclear that Gordon had actually referred to petitioner as "Steve Oo" during his testimony.  Flanagan had previously testified that a telephone number listed for "Steve O" on  Sonia Stevenson's text messager was petitioner's.

Reply Memorandum in Support of Petition for Writ of Habeas Corpus

1   Waxler as a live witness (you don't "call" a transcript) to avoid the introduction of Gordon's trial

2   testimony.

3        Respondent offers the following alternative argument in support of its notion that defense

4   counsel must have had other, unstated reasons for not calling Waxler as a witness:

5   "The record also sheds light on what counsel's real reasons for not calling Waxler
    were likely to have been. In the discussions about Waxler's testimony, Petitioner's

6   counsel repeatedly stated that he wished to elicit only Waxler's testimony
    regarding Gordon's alleged statement that he was the shooter. (See 7 RT 2052,

7   2159, 2164, 2202, 2204-05.) He argued that this statement was admissible as a
    declaration against interest, but that the rest was hearsay. (7 RT 2159, 2164,

8   2202, 2204-05.)"

9   Respondent then speculates that the reason defense counsel didn't want all of Waxler's testimony

10  in was that Gordon had told Waxler that petitioner was present at the crime scene.

11  Respondent's brief, page 44.

12       However, the record clearly shows that the "real reasons" defense counsel sought to

13  introduce only portions of Waxler's trial testimony was that the trial court told defense counsel

14  that it would only allow the portion of Waxler's testimony that fell under various hearsay

15  exceptions:

16       Mr. Webster:       "I have no objection to reading the entirety of Mr. Waxler's
                                        testimony."

17       The Court: . . .    ". . . .But that declaration against penal interests doesn't

18                                   allow the whole testimony.  We have to pick and choose."

19       Mr. Webster:       "Right.  And I'd offer to limit it to two pages."

20  (RT vol. 8 p. 2163-2164.)  Defense counsel didn't particularly care whether Mr. Waxler's entire

21  trial testimony was admitted or just selected portions. Thus, respondent's theory that defense

22  counsel really decided not to introduce Waxler's trial testimony because he though some portion

23  would damage petitioner's case is mistaken.  Defense counsel had no objection to introducing

24  the entire Waxler transcript.  Moreover, trial counsel was clearly willing to call Waxler live as

25  well, which would have rendered the issue of what portions of Waxler's trial testimony to admit

26  moot.

27       However, assuming trial counsel's reasons for not presenting Waxler's testimony, either

28  live or by transcript, is not clear, petitioner would point out that there was no evidentiary

hearing in the state court on petitioner's collateral relief petition.  In finding that defense counsel decided not to call Waxler "presumably concluding" that Waxler would be impeached on cross-examination, the Court of Appeals found facts without any supporting evidence having been developed at an evidentiary hearing.  A petitioner is entitled to an evidentiary hearing in federal court if the state court's decision was an unreasonable determination of the facts. *Earp v. Ornoski*, 431 F.3d 1158 at 1166-1167 (9th Cir. 2005), citing *Lockyer v. Andrade*, 538 U.S. 63, 71, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).

> "*Townsend* [*v. Sain*, 372 U.S. 293, 83 S. Ct. 745, 9 L. Ed. 2d 770 (1963)] establishes that a defendant is entitled to an evidentiary hearing if he can show that:
>
> > (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair hearing.
>
> *Townsend*, 372 U.S. at 313. If the defendant can establish any one of those circumstances, then the state court's decision was based on an unreasonable determination of the facts and the federal court can independently review the merits of that decision by conducting an evidentiary hearing. See *Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004) ('If, for example, a state court makes evidentiary findings without holding a hearing and giving petitioner an opportunity to present evidence, such findings clearly result in an "unreasonable determination" of the facts.')."

*Earp v. Ornoski*, 431 F.3d at 1167.

Respondent apparently disputes why defense counsel decided not to call Waxler, despite his explicit statements in the record.  If this court believes the record is not clear that counsel's decision was based on the trial court's ruling that it would allow the introduction of the designated portions of Gordon's trial testimony, the reasons for counsel's decision would have to be established at an evidentiary hearing.

Respondent also argues that defense counsel's failure to cite *Crawford* was not ineffective, but its argument is based on its erroneous belief, or speculation, that defense counsel actually declined to call Waxler or introduce his testimony for reasons other than what he stated on the record.  At this point in the proceedings, such "other reasons" would have to be shown at an

evidentiary hearing.

### 4.  Conclusion

For the above reasons, those set forth in the initial petition and supporting memorandum, and any facts generated in an evidentiary hearing, this court should issue a writ of habeas corpus.

Dated:  Oakland, California, Tuesday, October 5, 2010.

s/ Paul McCarthy
_____

**Robert J. Beles**
Paul McCarthy
Attorneys for *Petitioner STEVEN ALLEN JONES*

ORIGINAL                                                                    ORIGINAL

**PROOF OF SERVICE**

I, the undersigned, depose and state: I reside or do business within the County of Alameda. I am eighteen years of age or older and not a party to this action. My business address is 1 Kaiser Plaza, Suite 2300, Oakland, CA 94612-3642.

On Tuesday, October 5, 2010, I served the following documents:

**Reply Memorandum in Support of Petition for Writ of Habeas Corpus**

I served the following persons by ❑ U.S. mail ❑ FAX ❑ personal delivery:

Catherine Chatman                          Steven Jones CDC F-23851
Attorney General's Office for the State of   High Desert State Prison
California                                   P.O. Box 3030, B-2 139 Upper
1300 I Street                                Susanville, CA 96127-3030
P.O. Box 944255
Sacramento, CA 94244-2550
(916) 324-5364
Fax: (916) 324-2960
Email: catherine.chatman@doj.ca.gov

Attorney for Respondent

I declare under penalty of perjury that the above is true. Executed in Oakland, California on Tuesday, October 5, 2010            .

s/ Paul McCarthy
_____