ORIGINAL                                                          ORIGINAL

1   Robert J. Beles bar No. 41993
    Paul McCarthy bar no. 139497
2   One Kaiser Plaza, Suite 2300
    Oakland, California 94612-3642
3   Tel No. (510) 836-0100
    Fax. No. (510) 832-3690

4
    Attorney for *Petitioner*
5   *STEVEN ALLEN JONES*

6

7

8                    United States District Court
                     Eastern District of California
9

10  STEVEN ALLEN JONES,                    No. **2:10-CV-00196-MCE-GGH**

11              *Petitioner*,              OBJECTIONS TO MAGISTRATE'S ORDER,
         vs.                               FINDINGS, AND RECOMMENDATIONS
12
    MIKE MCDONALD, Warden, High Desert
13  State Prison, Susanville, California,

14              *Respondent*.

15  PEOPLE OF THE STATE OF CALIFORNIA,

16              *Real Party in Interest*.

17
                    OBJECTIONS TO MAGISTRATE'S ORDER,
18                  FINDINGS, AND RECOMMENDATIONS

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

*item*                                                                      *page number*

OBJECTIONS TO MAGISTRATE'S ORDER, FINDINGS, AND
RECOMMENDATIONS.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

1. The corroboration issue. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

a. The district court, as a matter of deference, should avoid determining
that published opinions of the Ninth Circuit have been "effectively
overruled.".. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

b. *Swarthout v. Cooke* does not "effectively overrule" *Laboa v. Calderon.*
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

c. Petitioner was arbitrarily deprived of his right, under section 1111, not
to be convicted solely on the uncorroborated testimony of an accomplice,
in violation of his right to a fair trial under the due process clause.. . . . . . .  7

(1) Introduction.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

(2) Evidence claimed to be corroboration by the Court of Appeal
either failed to connect petitioner with the scene of the crime or
depended on a bootstrap provided by the accomplice's
testimony.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

(a) Lyntasha Barrett's "identification.". . . . . . . . . . . . . . . .  8

(b) "Steven's" text messager device. . . . . . . . . . . . . . . . . . .  9

(c) DNA evidence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

(d) Details of robbery / shooting. . . . . . . . . . . . . . . . . . . . .  9

(e) Information that petitioner was in New York and
Nevada.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

(f) Summary. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

2. Instructing the jury that it could find that petitioner fled and infer
consciousness of guilt from that finding violated petitioner's right to due process,
where the only evidence of flight was Flanagan's testimony that petitioner had fled
from the scene.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

3. Where the evidence clearly showed that there was only one gunman, trying
petitioner as the triggerman after Gordon had already been prosecuted on the
theory that he was the triggerman violated petitioner's right to due process.. . . . . . .  16

4. Defense counsel was ineffective in failing to object, based on *Crawford v.
Washington,* to the trial court's ruling that the prosecutor could introduce
Gordon's prior recorded testimony accusing appellant of the crime if Waxler
testified, and in failing to call Waxler.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

5. Where the state courts have unreasonably determined the facts, petitioner is entitled to an evidentiary hearing on any issue where he has made a colorable case for relief... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

6. Error, considered cumulatively, violated petitioner's due process rights.. . . . . . .   21

7. If the district court dismisses this petition, it should certify all of the above issues as appealable.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21

   a. Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21

   b. Standard for granting a certificate of appeal ability.. . . . . . . . . . . . . . . .   22

   c. Argument  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   24

        (1) Whether *Swarthout v. Cooke* bars this court from reaching the corroboration issue under the due process clause.. . . . . . . . . . . . . . .   24

        (2) Whether petitioner was arbitrarily deprived of his right not to be convicted solely on the uncorroborated testimony of an accomplice within the meaning of *Laboa v. Calderon* and *Hicks v. Oklahoma*.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   25

        (3) Whether the flight instruction violated petitioner's right to due process.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   25

        (4) Whether the prosecution's conduct in first trying Gordon as the gunman  based on Waxler's testimony, then trying petitioner as the gunman and blocking Waxler's testimony that Gordon had admitted being the gunman violated the prosecution's duty not to present false evidence under *Napue v. Illinois*.. . . . . . . . . . . . . . . . . . .   25

        (5) Whether defense counsel's failure to object to the trial court's ruling that it would allow introduction of Gordon's trial testimony on Crawford grounds and failure to call Waxler was ineffective and prejudicial.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   26

        (6) Evidentiary hearing on the ineffectiveness issue... . . . . . . . . . . . . .   26

   (7) Cumulative error... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   26

8. Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   26

# TABLE OF AUTHORITIES

*cases*                                                                                      page number

*Alcorta v. Texas*, 355 U.S. 28, 78 S. Ct. 103, 2 L. Ed. 2d 9 (1957). . . . . . . . . . . . . . . . . . .  18

*Auto Equity Sales, Inc. v. Superior Court of Santa Clara County*, 57 Cal. 2d 450, 369 P.2d 937, 20 Cal. Rptr. 321 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

*Ballard v. Estelle*, 937 F.2d 453 (9th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

*Barefoot v. Estelle*, 463 U.S. 880, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983). . . . . . . . .  22, 23

*Beardslee v. Brown*, 393 F.3d 899 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22, 23

*Birt v. Superior Court* (1973) 34 Cal.App.3d 934 . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11, 13

*Brady vs. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215(1963). . . . . . . . . . . .  6

*Campbell v. Blodgett*, 997 F.2d 512 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

*Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). . .  17, 19

*Darden v. Wainwright*, 477 U.S. 168, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986). . . . . . . .  6

*Donnelly v. Dechristoforo*, 416 U.S. 637, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974) . . . . .  5, 6

*Dye v. Hofbauer*, 546 U.S. 1, 3-4, 126 S. Ct. 5, 163 L. Ed. 2d 1 (2005). . . . . . . . . . . . . .  5

*Earp v. Ornoski*, 431 F.3d 1158 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

*Fetterly v. Paskett*, 997 F.2d 1295 (9th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

*Giles v. Maryland*, 386 U.S. 66, 87 S. Ct. 793, 17 L. Ed. 2d 737 (1967) . . . . . . . . . . .  16, 18

*Greenholtz v. Inmates of Neb. Penal and Correctional Complex*, 442 U.S. 1, 99 S. Ct. 2100, 60 L. Ed. 2d 668 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

*Harris v. Vasquez*, 901 F.2d 724 (9th Cir.1990) (Order of Noonan, J.) . . . . . . . . . . . . . .  23

*Hart v. Massanari*, 266 F.3d 1155 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2-4

*Hayes v. Brown*, 399 F.3d 972 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

*Hicks v. Oklahoma*, 447 U.S. 343, 100 S. Ct. 2227, 65 L. Ed. 2d 175 (1980). . . 1, 4-6, 8, 24

*Hurles v. Ryan*, 650 F.3d 1301 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

*In re Sakarias* (2005) 35 Cal. 4th 140. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

*Insyxiengmay v. Morgan*, 403 F.3d 657 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . .  21

*Jefferson v. Welborn*, 222 F.3d 286 (7th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

ORIGINAL                                                          ORIGINAL

*cases*                                                          *page number*

*Jennings v. Woodford*, 290 F.3d 1006 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . .   22

*Laboa v. Calderon*, 224 F.3d 972 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . .   1, 2, 4, 8, 24-26

*Lambright v. Stewart*, 220 F.3d 1022 (9th Cir. 2000) (*en banc*),. . . . . . . . . . . . . . . . . .  22-24

*Lockyer v. Andrade*, 538 U.S. 63, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). . . . . . . . . .   21

*Mikes v. Borg*, 947 F.2d 353 (9th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11, 12

*Miller v. Gammie*, 335 F.3d 889 (9th Cir. 2003) (en banc). . . . . . . . . . . . . . . . . . . . . . . .  2-4

Miller v. Or. Bd. of Parole & Post-Prison Supervision, 642 F.3d 711 (9th Cir. 2011).. . . . . .   7

*Miller-El v. Cockrell*, 537 U.S. 322, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003). . . . .  22, 23

*Morgan v. Illinois*, 504 U.S. 719, 112 S. Ct. 2222, 119 L. Ed. 2d 492 (1992) . . . . . . . . . .   6

*Napue v. Illinois*, 360 U.S. 264, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959). . . .  16, 18, 25, 26

*Nardi v. Stewart*, 354 F.3d 1134 (9th Cir. 2004).. . . . . . . . . . . . . . . . . . . . . . . . . . . . .   22

*Ortega v. United States*, 861 F.2d 600 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . .   3

*People v. Bean* (1988) 46 Cal.3d 919 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

*People v. Fauber* (1992) 2 Cal. 4th 792. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7, 8

*People v. Luker* (1965) 63 Cal.2d 464. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8, 10, 13

*People v. Reingold*, 87 Cal.App.2d 382. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8, 11

*People v. Robbins* (1915) 171 Cal. 466. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

*People v. Robinson* (1964) 61 Cal.2d 373. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8, 11, 13

*People v. Tewksbury* (1976) 15 Cal.3d 953. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

*Petrocelli v. Angelone*, 248 F.3d 877 (9th Cir.2001) (*en banc*). . . . . . . . . . . . . . . . . . . . . .   23

*Phillips v. Woodford*, 267 F.3d 966 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21

*Prellwitz v. Sisto*, 657 F.3d 1035, 1039 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . .   7

*Pyle v. Kansas*, 317 U.S. 213, 63 S. Ct. 177, 87 L. Ed. 214 (1942) . . . . . . . . . . . . . . . . .   18

*Roberts v. Hartley*, 640 F.3d 1042 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

*Schell v. Witek,* 218 F.3d 101 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

*Sechrest  v. Ignacio*, 549 F.3d 789 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

Objections to Magistrate's Order, Findings and Recommendations

*cases*                                                          *page number*

*Silva v. Woodford*, 279 F.3d 825 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

*Slack v. McDaniel*, 529 U.S. 473, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). . . . . . . . .  22, 23

*Smith v. Groose* 205 F.3d 1045 (8th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

*Stankewitz v. Woodford*, 365 F.3d 706 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

*Styre v. Adams,* 645 F.3d 1106 (9th Cir.2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

*Swarthout v. Cooke*, __ U.S. __, 131 S.Ct 859, 178 L.Ed.2d 732 (2011). . . . . .  2, 4, 6, 7, 24

*Taylor v. Stainer,* 31 F.3d 907 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

*Thomas v. Hubbard,* 273 F.3d 1164 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

*Thompson v. Calderon*, 120 F.3d 1045 (9th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

*Towery v. Schriro*, 641 F.3d 300 (9th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

*Turner v. Louisiana*, 379 U.S. 466, 85 S. Ct. 546, 13 L. Ed. 2d 424 (1965). . . . . . .  6, 16, 18

*United States v. Bagley*, 473 U.S. 667, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985) . . . . . . .  6

*United States v. Whitlock*, 639 F.3d 935 (9th Cir. 2011. . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

*Van Pilon v. Reed*, 799 F.2d 1332 (9th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

*Vansickel v. White*, 166 F.3d 953 (9th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

*Walker v. Deeds*, 50 F.3d 670, 673 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

*Wasko v. Vasquez*, 820 F.2d 1090 (9th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

*Williams v. Woodford*, 384 F.3d 567 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

*Williams v. Woodford*, 396 F.3d 1059 (Williams 2) (9th Cir. 2005) . . . . . . . . . . . . . . . . . . .  22

ORIGINAL                                                                    ORIGINAL

*statutes and rules*                                                      *page number*

28 U.S.C. section 2253 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21

California Penal Code section 1111 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1, 25

Ninth Circuit Rule 36-3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

Penal Code section 1111 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

United States Constitution, Fourteenth Amendment
(due process clause) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4-8, 15-18, 21, 24-26

United States Constitution, Sixth Amendment (right to jury trial) . . . . . . . . . . . . . . . . . . .   6

Objections to Magistrate's Order, Findings and Recommendations

ORIGINAL                                                                                    ORIGINAL

United States District Court
Eastern District of California

STEVEN ALLEN JONES,                                       NO. 2:10-CV-00196-MCE-GGH

         *Petitioner*,                              OBJECTIONS TO MAGISTRATE'S ORDER,
      vs.                                            FINDINGS, AND RECOMMENDATIONS

MIKE MCDONALD, Warden, High Desert
State Prison, Susanville, California,

         *Respondent*.

PEOPLE OF THE STATE OF CALIFORNIA,

         *Real Party in Interest*.

## OBJECTIONS TO MAGISTRATE'S ORDER, FINDINGS, AND RECOMMENDATIONS

### 1. The corroboration issue

This case involves a Trinity County shooting that occurred after the purported buyers of five pounds of marijuana stole it and drove away. Following a car chase, the seller was killed and his friend injured. One of the thieves, Leon Flanagan, testified as a prosecution witness against petitioner and co-defendant David Jones at trial. [1]

Petitioner argued that Flanagan was an accomplice whose testimony was required to be corroborated to support a conviction under California Penal Code section 1111, and that Flanagan's testimony was not corroborated. Acknowledging that there is no federal constitutional requirement of accomplice corroboration, petitioner relied on the Ninth Circuit's decision in *Laboa v. Calderon*, 224 F.3d 972, 979 (9th Cir. 2000). *Laboa* held that a federal court can grant habeas relief for a conviction based on the uncorroborated testimony of an accomplice, even though corroboration is purely a state statutory right, if the state court's action violates the petitioner's Fourteenth Amendment due process right to fundamental fairness. This would occur if the state arbitrarily deprived the petitioner of the state law entitlement. *Laboa v. Calderon*, 224 F.3d at 979, citing *Hicks Oklahoma*, 447 U.S. 343, 346, 6 100 S. Ct. 2227, 5

[1] Petitioner and David Jones were not relatives, but coincidentally had the same surname.

1

ORIGINAL                                                                    ORIGINAL

L. Ed. 2d 175 (1980).

Laboa v. Calderon has never been overruled. Despite this, the magistrate has recommended that the district court deny relief on this claim because federal courts cannot provide relief for a state created right like the requirement of accomplice corroboration at trial. The magistrate has recommended that this court find that Laboa v. Calderon has been "effectively overruled" by the later U.S. Supreme Court case of Swarthout v. Cooke, __ U.S. __, 131 S.Ct 859, 178 L.Ed.2d 732 (2011). The magistrate relies on Miller v. Gammie, 335 F.3d 889, 893 (9th Cir. 2003) (en banc), which held that "where the reasoning or theory of our prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority, a three-judge panel should consider itself bound by the later and controlling authority, and should reject the prior circuit opinion as having been effectively overruled."

### a. The district court, as a matter of deference, should avoid determining that published opinions of the Ninth Circuit have been "effectively overruled."

Before considering whether to adopt this recommendation of the magistrate, this court must consider whether a district court, as an inferior court, should reject a published decision of a three judge panel of the Ninth Circuit that has never been overruled by that court.

In Hart v. Massanari, 266 F.3d 1155 (9th Cir. 2001), Chief Judge Kozinski, addressing Ninth Circuit Rule 36-3, which permits the Ninth Circuit to designate some, but not all, of its opinions as "published", pointed out that publication of a decision of a three judge panel creates a precedent. Kozinski noted that at common law, a precedent would be considered by later courts but such courts were free to "forge a different path than suggested by prior authorities that have considered the issue." However:

> "...precedent also serves a very different function in the federal courts today, one related to the horizontal and vertical organization of those courts. See John Harrison, **The Power of Congress Over The Rules of Precedent**, 50 Duke L.J. 503 (2000). A district judge may not respectfully (or disrespectfully) disagree with his learned colleagues on his own court of appeals who have ruled on a controlling legal issue, or with Supreme Court Justices writing for a majority of the Court.[24] Binding authority within this regime cannot be considered and cast aside; it is not merely evidence of what the law is. Rather, caselaw on point is the law. If a court must decide an issue governed by a prior opinion that constitutes binding authority, the later court is bound to reach the same result, even if it considers the rule unwise or incorrect. Binding authority must be followed unless and until

ORIGINAL                                                                            ORIGINAL

overruled by a body competent to do so.

fn 24 The same practice is followed in the state courts as well. See, e.g., *Auto Equity Sales, Inc. v. Superior Court of Santa Clara County*, 57 Cal. 2d 450, 369 P.2d 937, 940, 20 Cal. Rptr. 321 (Cal. 1962) ("Courts exercising inferior jurisdiction must accept the law declared by courts of superior jurisdiction. It is not their function to attempt to overrule decisions of a higher court.").

*Hart v. Massanari*, 266 F.3d at 1170. The Chief Judge went on to point out:

"Obviously, binding authority is very powerful medicine. A decision of the Supreme Court will control that corner of the law unless and until the Supreme Court itself overrules or modifies it. Judges of the inferior courts may voice their criticisms, but follow it they must. See, e.g., *Ortega v. United States*, 861 F.2d 600, 603 & n. 4 (9th Cir. 1988) ('This case is squarely controlled by the Supreme Court's recent decision . . . . [We] agree[]with the dissent that [appellant] deserves better treatment from our Government. Unfortunately, legal precedent deprives us of discretion to do equity.'). The same is true as to circuit authority, although it usually covers a much smaller geographic area. Circuit law, a concept wholly unknown at the time of the Framing, see Danny J. Boggs & Brian P. Brooks, **Unpublished Opinions & the Nature of Precedent**, 4 Green Bag 2d 17, 22 (2000), binds all courts within a particular circuit, including the court of appeals itself. Thus, the first panel to consider an issue sets the law not only for all the inferior courts in the circuit, but also future panels of the court of appeals."

*Hart v. Massanari*, 266 F.3d at 1171. *Kozinski* acknowledged that "the federal courts could operate, though much less efficiently, if judges of inferior courts had discretion to consider the opinions of higher courts, but 'respectfully disagree' with them for good and sufficient reasons." *Hart v. Massanari*, 266 F.3d at 1174, and observed that this strict rule at times deprives the federal courts of flexibility since "a district court bound by circuit authority, for example, has no choice but to follow it, even if convinced that such authority was wrongly decided." *Hart v. Massanari*, 266 F.3d at 1175.

In *Miller v. Gammie*, the Ninth Circuit, sitting *en banc*, described its decision as an effort to

"clarify our law concerning the sometimes very difficult question of when a three-judge panel may reexamine normally controlling circuit precedent in the face of an intervening United States Supreme Court decision, or an intervening decision on controlling state law by a state court of last resort. We hold that in circumstances like those presented here, where the reasoning or theory of our prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority, a three-judge panel should consider itself bound by the later and controlling authority, and should reject the prior circuit opinion as having been effectively overruled."

*Miller v. Gammie*, 335 F.3d at 892-893. Thus, *Miller v. Gammie* is primarily directed to

1   three judge panels of the Ninth Circuit and not district courts, even though the *en banc* court

2   did state in passing that the rule announced in the case would apply to district courts as well.

3   *Miller v. Gammie*, 355 F.3d at 900.

4        However, while a district court may have the power under *Miller v. Gammie* to determine

5   that an otherwise binding precedent of the Ninth Circuit is so "clearly inconsistent" with a later

6   decision of the U.S. Supreme Court that it must be regarded as "effectively overruled" by that

7   decision, this court must consider whether, as a matter of policy, the issue is so clear that it

8   should do so. As *Hart v. Massanari* held, "binding authority must be followed unless and until

9   overruled by a body **competent to do so**." *Hart v. Massanari*, 266 F.3d at 1170. Within the

10   structure of the district and appellate courts discussed in *Hart v. Massanari*, a body who is

11   "competent" to overrule previous circuit law is normally that body that has the power to

12   establish new circuit law, since the "overruling" of a previously binding decision necessarily

13   substitutes a different rule. This body would be a panel of the Ninth Circuit, since district courts

14   do not have the power to create binding circuit law. *Hart v. Massanari*, 266 F.3d at 1174. An

15   appellate panel also has more time and resources to fully consider the issue. Moreover, as

16   discussed below, adopting the magistrate's interpretation would involve the overruling of more

17   than one published Ninth Circuit opinion.

18        **b. *Swarthout v. Cooke* does not "effectively overrule" *Laboa v. Calderon*.**

19        The magistrate interprets *Swarthout v. Cooke* as eliminating any sort of federal

20   consideration of state created substantive rights in federal habeas corpus cases and restricting any

21   such consideration to whether procedures consistent with due process were employed. Since

22   *Laboa v. Calderon* held that a federal court can review an "arbitrary deprivation" of a state

23   created right, the magistrate believes that *Swarthout* effectively overruled *Laboa*.

24        *Laboa v. Calderon* was based on *Hicks v. Oklahoma*, a decision not mentioned in

25   *Swarthout*. In *Hicks*, a defendant was sentenced for unlawfully distributing heroin under a state

26   statutory scheme that entitled a defendant to have the length of his sentence determined by the

27   jury. The habitual offender statute would have ordinarily permitted the jury to impose any

28

4

sentence of ten years or above, a mandatory provision required the jury to impose a sentence of 40 years for anyone with two prior felony convictions. During his appeal, the Oklahoma courts declared the 40 year mandatory sentence unconstitutional. The appellate court in *Hicks*' case declined to set his 40 year sentence aside, however, because it was within the range of lawful sentences the jury could have imposed. The Supreme Court held that defendant had been arbitrarily deprived of his state statutory right to have the jury determine his sentence rather than an appellate court, even though there is no federal constitutional right to have a jury determine the length of a sentence. *Hicks v. Oklahoma*, 447 U.S. at 346.

The right in *Hicks* was not a mere procedural right to have a certain type of hearing, but a state-created substantive right to have a jury determine the length of the sentence. If *Swarthout* meant what the magistrate says it does, then *Swarthout* would have effectively overruled *Hicks* as well. Yet the opinion does not mention *Hicks*. [2]

*Donnelly v. Dechristoforo*, 416 U.S. 637, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974) is a pre-*Hicks* case that also held that an error of purely state law could violate due process. The prosecutor presented closing argument that did not burden any specific right but allegedly prejudiced the defendant's right to a fair trial. The Supreme Court held that such an argument could be addressed by the federal court, on habeas, if the argument "so infected the trial with unfairness as to make the resulting conviction a denial of due process", but found that the argument at issue did not do so. *Donnelly v. Dechristoforo*, 416 U.S. at 643. The Supreme Court has regularly cited the *Donnelly* standard with approval. See, e.g. *Dye v. Hofbauer*, 546 U.S. 1,

---

[2] Various Ninth Circuit cases have reaffirmed the *Hicks* standard in situations that did not involve mere procedural rights. See, e.g., *Vansickel v. White*, 166 F.3d 953, 957 (9th Cir. 1999) (arbitrary denial of state right to a specified number of peremptory challenges in a capital case would deprive a defendant of due process even though there is no federal right to a specified number of such challenges), *Walker v. Deeds*, 50 F.3d 670, 673 (9th Cir. 1995) (sentencing court's failure to comply with state statute requiring a finding that habitual offender status is "just and proper" arbitrarily deprived defendant of his state right and violated due process), *Campbell v. Blodgett*, 997 F.2d 512, 522 (9th Cir. 1992) (while a state court right to have state Supreme Court make particular findings before affirming a death sentence was a liberty interest protected by due process, the court held that the required findings had been made); see also *Fetterly v. Paskett*, 997 F.2d 1295, 1300 (9th Cir. 1993), *Ballard v. Estelle*, 937 F.2d 453, 456 (9th Cir. 1991), *Wasko v. Vasquez*, 820 F.2d 1090, 1091 n.2 (9th Cir. 1987.)

ORIGINAL                                                                    ORIGINAL

3-4, 126 S. Ct. 5, 163 L. Ed. 2d 1 (2005), *Darden v. Wainwright*, 477 U.S. 168, 181-82, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986). The Ninth Circuit most recently reaffirmed the *Donnelly* standard in *Towery v. Schriro*, 641 F.3d 300, 310 (9th Cir. 2010) (approving the test for "generic misconduct", i.e. misconduct not involving a particular constitutional right.) *See also Sechrest v. Ignacio*, 549 F.3d 789 (9th Cir. 2008) (prosecutor's statements in jury voir dire and closing argument that a capital defendant could be paroled even if sentenced to life without parole denied the defendant's right to due process.) *Swarthout* does not mention the *Donnelly /Darden* line of cases.

The critical difference between *Swarthout* and cases like *Hicks, Donnelly*, and *Darden* is that the later cases concern the right to a fair trial, which is an independent requirement of both due process and the Sixth Amendment right to jury trial. *Turner v. Louisiana*, 379 U.S. 466, 471-472, 85 S. Ct. 546, 13 L. Ed. 2d 424 (1965), *United States v. Bagley*, 473 U.S. 667, 675, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985) ("The *Brady* [*vs. Maryland*, 373 U.S. 83; 83 S. Ct. 1194; 10 L. Ed. 2d 215(1963)] rule is based on the requirement of due process. Its purpose is not to displace the adversary system as the primary means by which truth is uncovered, but to ensure that a miscarriage of justice does not occur.") This is true even where a jury trial is simply provided as a requirement of state law and would not otherwise be required by the Sixth Amendment, as in penalty trials in capital cases, *Morgan v. Illinois*, 504 U.S. 719, 727, 112 S. Ct. 2222, 119 L. Ed. 2d 492 (1992), *Hicks v. Oklahoma* (right to jury determination of sentence), *Hurles v. Ryan*, 650 F.3d 1301, 1309 (9th Cir. 2011) (judicial bias deprived defendant of a fair trial and due process.)[3] Thus, an error of purely state law at trial can violate due process of law if the error deprives the defendant of a fair trial. Penal Code section 1111's requirement that a defendant's conviction not be based solely on the uncorroborated statements of an accomplice is undoubtedly a trial right, and much more of a trial right than the right to jury sentencing in *Hicks*.

---

[3] The dissent cited *Swarthout*, but only on the non-issue that the Supreme Court has criticized the Ninth Circuit for failing to defer to state court decisions under AEDPA. *Hurles v. Ryan*, 650 F.3d at 1334 n 18 (9th Cir. 2011) (Ikuta, J. dissenting.)

Objections to Magistrate's Order, Findings and Recommendations

ORIGINAL                                                                                                          ORIGINAL

1   In contrast, *Swarthout* involved a convicted prisoner's alleged right to release on parole,

2   and as *Swarthout* recognized, there is no federal constitutional right to parole at all. *Swarthout*

3   *v. Cooke*, 131 S.Ct at 862, citing *Greenholtz v. Inmates of Neb. Penal and Correctional Complex*,

4   442 U.S. 1, 12, 99 S. Ct. 2100, 60 L. Ed. 2d 668 (1979). *Swarthout* was decided "in the context

5   of parole", *id.* at 862 [4], and the Court stated that "the only federal right at issue is procedural",

6   *id.* at 863. *Swarthout* did not cite any of the trial type due process cases, and these cases would

7   have been irrelevant since a parole hearing is not a criminal trial.

8   Thus, this court must reject the magistrate's recommendation that petitioner's

9   corroboration argument is barred by *Swarthout v. Cooke*.

10   **c. Petitioner was arbitrarily deprived of his right, under section 1111, not
        to be convicted solely on the uncorroborated testimony of an accomplice,**

11   **in violation of his right to a fair trial under the due process clause.**

12   **(1) Introduction.**

13   Petitioner was charged as the gunman in a robbery-murder in which four people fled in

14   a car after stealing five pounds of marijuana. He was convicted solely on the uncorroborated

15   testimony of the accomplice Flanagan. The sole eyewitness to the shooting who was close

16   enough to identify anyone, Gonzalez, testified that petitioner was neither the gunman or any of

17   the three others accompanying the gunman. Instead, Gonzalez identified a photo on film in a

18   disposable camera that the police had found in Flanagan's abandoned car as the gunman. The

19   photo was of a fifth individual, Williams, who was never charged. This suggests that Flanagan

20   shielded his associate, Williams, by substituting petitioner as the alleged gunman, and that law

21   enforcement acquiesced in such conduct since they needed Flanagan's testimony.

22   Under Penal Code section 1111, a defendant cannot be convicted on the uncorroborated

23   testimony of an accomplice to the crime. *People v. Fauber* (1992) 2 Cal. 4th 792. As discussed

24

25   [4] The few reported Ninth Circuit opinions that interpret *Swarthout* assume that the decision is limited
     to parole hearings. See *Styre v. Adams,* 645 F.3d 1106, 1108 (9th Cir.2011), *Prellwitz v. Sisto*, 657 F.3d
26   1035, 1039 (9th Cir. 2011) (O'Scannlain, concurring) ("federal courts may not review state parole
     decisions for their substance"), *United States v. Whitlock*, 639 F.3d 935, 941 (9th Cir. 2011), *Miller v.*
27   *Or. Bd. of Parole & Post-Prison Supervision*, 642 F.3d 711, 712 (9th Cir. 2011), *Pearson v. Muntz*, 639
     F.3d 1185, 1187 (9th Cir. 2011), *Roberts v. Hartley*, 640 F.3d 1042, 1043, 1046 (9th Cir. 2011)
28   (distinguishing between denial of parole and revocation of good time credits.)

above, however, the federal court can grant habeas relief for a conviction based on the uncorroborated testimony of an accomplice if this violates the petitioner's due process right to a fair trial. *Laboa v. Calderon*, 224 F.3d at 979. "A State violates a criminal defendant's due process right to fundamental fairness if it arbitrarily deprives the defendant of a state law entitlement." *Laboa v. Calderon, id,* citing *Hicks v. Oklahoma*.

In *Laboa v. Calderon*, the Ninth Circuit found no such arbitrary deprivation because the accomplice's testimony had been adequately corroborated by the defendant's own statements that had been recorded in a surreptitiously-taped conversation in a police van. In this case, there were no statements of petitioner introduced into evidence, and no other evidence corroborating the accomplice Flanagan's testimony. Indeed, as mentioned before, Gonzalez' eyewitness testimony contradicted Flanagan's testimony. The Court of Appeal, however, found corroboration, in essence, by allowing Flanagan's testimony to corroborate itself, arbitrarily depriving petitioner of the protection of section 1111.

Under section 1111, the corroborative evidence required by section 1111 must come in by means of the testimony of a non accomplice witness. *People v. Fauber, People v. Tewksbury* (1976) 15 Cal.3d 953, 958. Such corroborating evidence must tend to connect the defendant with the crime without aid or assistance from the testimony of the accomplice, since, otherwise, the corroboration is essentially being bootstrapped. *People v. Luker* (1965) 63 Cal.2d 464, 469. Finally, it is insufficient corroboration merely to connect a defendant with the accomplice or other persons participating in the crime. *People v. Robinson* (1964) 61 Cal.2d 373, 400, citing *People v. Reingold*, 87 Cal.App.2d 382, 399-400.

**(2) Evidence claimed to be corroboration by the Court of Appeal either failed to connect petitioner with the scene of the crime or depended on a bootstrap provided by the accomplice's testimony.**

The "corroboration" cited by the Court of Appeal consisted of the following:

**(a) Lyntasha Barrett's "identification."**

"Lyntasha Barrett testified that she identified Steven and David from a photographic lineup and told the detective she was "positive" she saw these two men at Club West in Eureka the night of the after-party following the rap concert on November 1, 2003."

### (b) "Steven's" text messager device

"Flanagan's cell phone and Steven's text messager device, which were found in the abandoned Taurus, revealed that 10 or 11 phone calls or messages had been exchanged between the two men between October 30 and November 1, 2003, as Flanagan testified."

### (c) DNA evidence

c. "Several other items found in the back seat of the Taurus, including a baseball cap, a head wrap, and a blood stain on the seat, bore Steven's DNA, and expert testimony established that neither Jarvis or any of the other three occupants in the Taurus were the source of the DNA on those items."

### (d) Details of robbery / shooting

d. "Gonzales testified that when the Taurus pulled into the rest stop, there were four men in the vehicle, that David alighted from the back seat on the passenger side to speak with him, and at that time, he (Gonzales) recognized David as the man he had spoken to the night before at Club West. The testimony of Gonzales and Owen further established that after stealing the marijuana, David climbed into the back passenger side of the Taurus, where he struggled with Jarvis who was attempting to recover the marijuana. Residents who witnessed the end of the chase and the shooting testified that the passenger in the back seat behind the driver was firing at the truck during the chase and that when the Taurus stopped, a young black man got out of the back seat on the driver's side of the Taurus and fired five gunshots at the truck and then returned to the car. Afterwards, when the Taurus was heading towards Thurman on the bridge, Thurman saw the passenger who was seated behind the driver waving a gun at him."

### (e) Information that petitioner was in New York and Nevada

e. "After the crime, law enforcement officers were unable to find Steven for more than six months despite extensive efforts and at the end of that period, they received information he was in New York and then in Nevada using the name Michael Dennis Griffith."

### (f) Summary

f. "In sum, there was independent evidence that placed Steven in Eureka the night before the murder and established that during the events leading up to and immediately following the shooting, it was Steven who was sitting in the back seat behind the driver, and therefore it was Steven who was firing the gun during the chase and who shot the two victims. Additionally, evidence indicating that after the crime, Steven fled California using a false name to conceal his whereabouts and his identity and presented a false alibi defense at trial, raised strong inferences of a consciousness of guilt."

### (g) No record evidence corroborated Flanagan's testimony that petitioner was at the scene of the crime or was the gunman.

**Lyntasha Barrett's "identification":** If Ms. Barrett had actually testified that she had seen petitioner and David Jones at the after dinner party at Club West in Eureka on the night of the after party following the E-40 concert on November 1, 2003, she would actually have

contradicted, rather than corroborated, Flanagan's testimony. Flanagan testified that he and his three companions had arrived in Eureka too late to get into the after-party at Club West and had only mingled with others outside the club. (RT. v. 4 p. 1182.) However, as discussed in the petition, Barrett was emphatic that she had not identified any of the pictures shown to her as individuals she had seen in Eureka the night before. She said that all she'd told Detective Nawrock that she'd seen someone with eyes similar to one of the men in the photos, and seen someone with braids similar to another of the men in the photos. (RT. vol. 6, p. 1613 and 1614.) Although the two photos Barrett picked out as having similar features were petitioner and David Jones, Barrett was unable to identify either petitioner or David Jones in court. (RT. vol. 6 pp. 1619 and 1620.)

But even if that Barrett had testified that she had seen petitioner in Eureka on November 1, 2003, this would not have connected petitioner with the crime scene, as required by section 1111, but merely provided evidence possibly associating petitioner with one of the suspects, which is not "corroboration" within the meaning of section 1111. The robbery and shooting took place near Hawkins Bar, California, approximately 56 miles from Eureka. Evidence showed that there was a rap concert that evening that many people from the Bay area attended., including Barrett herself Evidence placing petitioner in Eureka the night before would no more corroborate his presence in Hawkins Bar the next day than placing a suspect in Sacramento the night before a crime occurred in Vallejo would "corroborate" his alleged participation in the Vallejo crime.

**Petitioner's test messager device:** The only evidence that the text messager device found in the green car was petitioner's was Flanagan's own testimony. This would be bootstrap "corroboration" under *People v. Luker*.

**DNA evidence:** Various items of clothing and a blood stain on the seat of the green car contained petitioner's DNA. The DNA analyst Inacio could not estimate the age of the samples. The DNA evidence was slightly weaker than finding petitioner's fingerprint in the car, since someone else might have brought the clothing into the car. However, the closest comparison is

with the fingerprint cases like *People v. Robinson*, in which the defendant's fingerprints had been found on the outside of the car used in the commission of the crime. The fingerprint expert testified that, although he could not place the date on which the prints were put on the car, he believed they were relatively recent because of the fact that the car was out of doors and prints on a painted surface disappear sooner when exposed to the elements. The court held:

> "Association with a criminal is not to be equated with connection with the crime. Moreover such a contention asks the jury to speculate on how and why the fingerprints appeared, with no evidence at all on that question. Even if the fact of the fingerprints be deemed to cast suspicion, even grave suspicion, on Drivers, such is insufficient. 'It is necessary that the evidence corroborating an accomplice shall connect or tend to connect the defendant with the commission of the crime. Corroborative evidence is insufficient where it merely casts a grave suspicion upon the accused. It must not only show the commission of the offense and the circumstances thereof, but must also implicate the accused in it. . . .' (*People v. Robbins* [(1915)], 171 Cal. 466, 470. At best, the fingerprints merely placed Drivers in the car at some time prior to the time the car was discovered. According to the inferences to be derived from the testimony of the prosecution's witnesses that could have been around the dinner hour, and before Drivers claimed to have parted company with the man who confessed to the commission of the crime some five or six hours later. This merely proves association. In *People v. Reingold*, 87 Cal.App.2d 382, 399-400, it was said:. 'There can be no question that it is insufficient corroboration merely to connect a defendant with the accomplice or other persons participating in the crime, but evidence independent of the testimony of the accomplice must tend to connect a defendant with the crime itself, and not simply with its perpetrators. It is not with the thief that the connection must be had but with the commission of the crime itself.'"

*People v. Robinson*, 61 Cal. 2d at 399-400.

*Birt v. Superior Court* (1973) 34 Cal.App.3d 934 extended the same rationale to a defendant's fingerprints found inside a van, on a cigarette lighter, where the van had been used by burglars to carry away the loot. This was the only evidence of defendant's involvement in the crime presented at his preliminary examination. The Court of Appeals held that the evidence was insufficient to support a holding order:

> "At most, the presence of petitioner's fingerprint on the lighter found on the front seat showed that, at some unknown time and place, she had been inside the van; but there was no direct or circumstantial evidence to indicate when and where that had been. Only by guesswork, speculation, or conjecture can it be inferred that petitioner was inside the van, or in the area, at the time of the McNutt burglary."

*Birt v. Superior Court*, 34 Cal. App. 3d at 938, citing cases.

These cases are similar to the Ninth Circuit's opinion in *Mikes v. Borg*, 947 F.2d 353 (9th

ORIGINAL                                                                ORIGINAL

Cir. 1991), which held that in fingerprint-only cases in which the prosecution's theory is based on the premise that the defendant handled certain objects while committing the crime in question, the record must contain sufficient evidence from which the trier of fact could reasonably infer that the fingerprints were in fact impressed at that time and not at some earlier time. *Mikes v. Borg*, 947 F.2d at 356-357. Defendant's fingerprints had been found on a three foot chromed post that had been used to bludgeon the victim to death in the basement of his fix-it shop, and on a similar six foot chromed post. The posts had been part of a turnstile unit that the victim had purchased at a hardware store's going out-of-business sale, approximately four months prior to his death. The Ninth Circuit held that since the defendant could have impressed his fingerprints on them before the victim acquired them, *Mikes v. Borg,* 947 F.2d at 359, the evidence fell "far short" of supporting a reasonable fact finder's conclusion that the posts were not accessible to the defendant before the victim acquired them, and defendant's constitutional right not to be convicted except by proof beyond a reasonable doubt was violated. Id. at 361.

The Court of Appeal, however, held that there was evidence in *Robinson* that "defendant and the car's owner were frequent visitors to the accomplice's apartment, and it was just as likely he had been in the car on other occasions as it was at the time of the crime. (Id. at p. 398.)" Petitioner, held the Court of Appeal, did not produce independent evidence that he had been in Flanagan's car before November 2, 2003. However, neither California law nor analogous federal law require defendant to introduce any evidence of innocent prior contact unless the area in which his fingerprints were found was inaccessible to the general public, and the cases finding the fingerprint area "inaccessible" typically involve immovable surfaces on the inside of private buildings. See, e.g., *Taylor v. Stainer,* 31 F.3d 907, 908-910 (9th Cir. 1994) (defendant's fingerprint found on inside window sill), *Schell v. Witek,* 218 F.3d 101 (9th Cir. 2000) (defendant's fingerprint found on inside surface of glass louver that had been removed by burglar to gain access to the house), *People v. Bean* (1988) 46 Cal.3d 919 (defendant's palmprint found on kitchen counter inside house.) Where the fingerprints are left on movable objects found at the scene, the courts are much less likely to find such evidence sufficient to connect

ORIGINAL                                                                                    ORIGINAL

defendant, even if the movable object is found in an inaccessible place, see, e.g., *Mikes v. Borg*.

Cases involving vehicles are even more problematic, as vehicles by their nature are more accessible to the general public than the interiors of private buildings. They change hands, admit casual guests and riders, and are on occasion left unlocked with their interiors fully accessible to the general public, even those unauthorized to be there. In *Birt v. Superior Court*, the only evidence that the defendant might have had prior access to the interior of the van was the fact that the van was a rental vehicle – there was no evidence that the defendant had ever been in the van. This was enough to show the possibility that the fingerprint was left on the lighter at some time other than the burglary. In this case, the green car involved in the robbery was not even Flanagan's. He had borrowed the car from his father. This was a car shared among more than one person. The items of clothing found in the car did not even show that petitioner had been in the car, but only that clothing with his DNA on it had been in the car. The bloodstain on the seat more strongly suggests that petitioner had been in the car, but unlike fingerprints, which an individual must personally impress on a surface, DNA can be transferred from one object to another.

Like Barrett's testimony, the DNA evidence did not place petitioner at the crime scene or connected him to the crime. It merely connected him with the accomplice, which is not "corroboration" within the meaning of section 1111. *People v. Robinson*, 61 Cal.2d at 400. Flanagan's testimony that the only time petitioner was in the car was at the time of the crime was This would be bootstrap "corroboration" under *People v. Luker*.

**Details of robbery / shooting**: Evidence corroborating Flanagan's testimony about details of the robbery not involving petitioner would not be evidence that petitioner was at the crime scene or involved in the crime. "Corroboration" under section 1111 must connect the defendant to the crime, not merely support the accomplice's testimony on other matters, such as the commission of the offense or the circumstances thereof. *People v. Rodrigues*, 8 Cal. 4th at 1128.

**Information that petitioner was in New York and Nevada:** The trial court disposed of petitioner's various hearsay and authentication objections by instructing the jury that it could

not consider such evidence for the truth of the matter concerned, but only to explain Detective Nawrock's subsequent actions. Thus, the jury could not have used the information that petitioner had been detained in New York and Nevada and had been collected by Detective Nawrock in Nevada as evidence that petitioner fled the jurisdiction, Evidence Code section 355, and thus such information was not available to corroborate any portion of Flanagan's testimony.

However, even if the evidence had been admitted generally as evidence of "flight", it would not connect petitioner with the specific crime that he was being prosecuted for, but only with "some offense." While circumstances such as flight may be received in evidence as indicating a consciousness of guilt, and may be considered as corroboration of an accomplice:

> "...unless the circumstances relied upon for 'corroboration' furnish inculpatory evidence -- that is, evidence tending to connect appellant with the specific crime involved... it is not legal and sufficient corroboration."

*People v. Reingold,* 87 Cal.App.2d at 399-400. Accord, *People v. Rodrigues*, 8 Cal. 4th at 1128.

To connect an act of alleged flight with a particular crime, there must be evidence of a direct link between the crime and the alleged flight. This is shown either by showing that the flight took place shortly after the crime, or with other evidence, often, admissions by the defendant, showed that he or she fled to avoid prosecution for the crime. See, e.g., *People v. Jones*, (1991) 53 Cal. 3d 1115, 1145 (defendant attempted to leave town within hours after the commission of the crime), *People v. Mendoza* (2000) 24 Cal 4th 130, *People v. Hall* (1934) 220 Cal 166. While *People v. Mason* (1991) 52 Cal.3d 909 held that "immediacy" depends on the facts of the case and that in that case, flight occurring four weeks after the commission of the crime was "immediate", the "flight" in *Mason* was unequivocal - a high speed chase by sheriff's deputies. *People v. Santo,* 43 Cal.2d 319, on which *Mason* relied, involved similarly unequivocal evidence – defendant admitted that she had moved after reading in the newspaper that her accomplice had been arrested and had implicated her in the murder.

Here, petitioner made no statements, and there was no evidence of when petitioner left the state to travel other than evidence placing him in Richmond the day after the shooting, November 4, 2003. There was thus no evidence linking petitioner's alleged flight and the

14

shooting. The shooting occurred on November 3, 2003. Flanagan told Detective Nawrock that

petitioner was one of the four robbers after he was arrested. Detective Nawrock testified that

the sheriffs had looked for petitioner in Richmond in December, 2003, but were unable to find

him. Nawrock also admitted, however, that they had spoken to petitioner's father for the first

time on March 4, 2004. Since the evidence, even if considered for its truth, only showed that

petitioner left California at some time before May of 2004, when Detective Nawrock learned

that petitioner had been briefly detained in New York, it would have been speculation to

conclude that he might have left after learning that he had been accused of the crime from his

father.

The Court of Appeal thus arbitrarily deprived petitioner of the state right, under section

1111, not to be convicted solely on the testimony of an accomplice, thus depriving him of his

due process right to a fair trial as set forth in *Laboa v. Calderon.*

**2. Instructing the jury that it could find that petitioner fled and infer consciousness of guilt from that finding violated petitioner's right to due process, where the only evidence of flight was Flanagan's testimony that petitioner had fled from the scene.**

In a related issue, the trial court violated petitioner's right to due process under *Hicks v.*

*Oklahoma* and *Laboa v. Calderon* by instructing the jury that it could infer consciousness of guilt

from evidence of flight.

As mentioned above, while there were two arguable instances of flight, petitioner's

alleged flight from the state was foreclosed because there was no evidence that he had done so.

All of the evidence that Detective Nawrock had located petitioner out of the state and had

picked him up in Nevada was admitted only for the limited purpose of explaining why Nawrock

went to Nevada to pick petitioner up. Thus, such evidence was unavailable for any other

purpose, such as evidence that petitioner fled the state.

The other instance of alleged flight was Flanagan's testimony that petitioner had fled the

scene of the crime. This, however, was supported only by Flanagan's uncorroborated testimony.

Although the testimony was admissible at trial, under section 1111, the jury could not use any

of Flanagan's testimony to find that petitioner was guilty, absent corroboration.

The trial court's instruction that the jury that consider any evidence of flight as evidence that petitioner had a consciousness of guilt implied that there was some evidence of flight. Reasonable jurors could have interpreted the flight instruction as permitting it to consider Flanagan's testimony on the issue of flight, even if it was uncorroborated. The giving of the flight instruction was a specific instance of the court's arbitrary deprivation of the right not to be convicted on the uncorroborated testimony of an accomplice under *Hicks v. Oklahoma* and *Laboa v. Calderon*.

   **3. Where the evidence clearly showed that there was only one gunman, trying petitioner as the triggerman after Gordon had already been prosecuted on the theory that he was the triggerman violated petitioner's right to due process.**

   In *Napue v. Illinois*, 360 U.S. 264, 79 S. Ct. 1173,3 L. Ed. 2d 1217 (1959), the United States Supreme Court held that the government's knowing presentation of false testimony is a violation of a defendant's right to due process under the Fourteenth Amendment to the U.S. Constitution. See also *Giles v. Maryland*, 386 U.S. 66, 17 L. Ed. 2d 737, 87 S. Ct. 793 (1967) (*Napue* means that the prosecutor has a constitutional duty to correct evidence he knows is false.)

   In *Thompson v. Calderon*, 120 F.3d 1045, 1058 (9ᵗʰ Cir. 1997), reversed on other grounds, 523 U.S. 538, 118 S. Ct. 1489, 140 L. Ed. 2d 728, the en banc Ninth Circuit, relying on *Turner v. Louisiana*, which held that due process guarantees a fundamentally fair trial, *Napue v. Illinois*, *and Giles v. Maryland*, held that this duty not to knowingly present false testimony means that "when no new significant evidence comes to light a prosecutor cannot, in order to convict two defendants at separate trials, offer inconsistent theories and facts regarding the same crime." *Thompson, id.*

   The California Supreme Court followed *Thompson v. Calderon* in *In re Sakarias* (2005) 35 Cal. 4th 140. *Sakarias* held that the "seeking of convictions" based on inconsistent factual theories was barred by *Thompson,* irrespective of whether convictions were obtained in the earlier trial. *In re Sakarias*, 35 Cal. 4th at 158, quoting *Smith v. Groose* 205 F.3d 1045 at 1051-1052 (8ᵗʰ Cir. 2000), ("'the use of inherently ... contradictory theories violates the principles of

ORIGINAL                                                                    ORIGINAL

1   due process' for '[t]he State's duty to its citizens does not allow it to pursue as many convictions

2   as possible without regard to fairness and the search for truth' (id. at p. 1051)"), also noting that

3   "the prosecution's use of inconsistent and irreconcilable theories has also been criticized as

4   inconsistent with the principles of public prosecution and the integrity of the criminal trial

5   system." *In re Sakarias*, 35 Cal. 4th at 159, and see discussion, *In re Sakarias*, 35 Cal. 4th at 163,

6   where the court held that the "seeking of convictions" and "pursuing" of "inconsistent theories",

7   under some circumstances, violates the due process rights of the defendant actually convicted.

8   *Sakarias* also held that the prosecution could use inconsistent theories if it did so "in good faith".

9   One example of "good faith" would be "a significant change in the available evidence", but the

10  court made it clear that the "change" could not be caused by a "strategic decision" of the

11  prosecution. *In re Sakarias*, 35 Cal. 4th at 162.

12      The prosecution initially prosecuted Gordon on the theory that he was the gunman. The

13  prosecution already had Flanagan's statements to Nawrock that petitioner was the gunman at

14  the time of Gordon's trial and knew that Flanagan, if called, would implicate petitioner rather

15  than Gordon. The prosecution must not have believed Flanagan, since they chose to prosecute

16  Gordon as the gunman based on his alleged confession to the jailhouse informant, Waxler.

17      After the jury failed to convict Gordon of being the triggerman, the prosecution elected

18  to withhold Waxler's testimony and proceed on Flanagan's. When the defense sought to call

19  Waxler as a witness to establish Gordon's admission that he was the gunman, the prosecution

20  blocked Waxler's testimony by inducing the trial judge to rule that, if Waxler testified, he would

21  allow the prosecution to introduce Gordon's trial testimony denying that he had told Waxler

22  that he was the gunman and accusing petitioner of having been the gunman. This was a

23  fundamentally unfair ruling because the defense would not be able to cross-examine Gordon and

24  in fact Gordon't trial testimony was categorically inadmissible for this reason under *Crawford*

25  *v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). Based on the court's

26  ruling, the defense did not call Waxler as a witness. In closing argument, the prosecution took

27  advantage of the suppression of Waxler's testimony, which contradicted Flanagan's testimony,

28

17

to argue that the jury should believe Flanagan and conclude that petitioner was the gunman.

The magistrate objects that the Supreme Court has never specifically ruled that presenting factually inconsistent theories in successive trials is a violation of due process. (Magistrate's recommendations, p. 17.) However, the magistrate's reasoning is incomplete. The Supreme Court long ago ruled that it was a violation of due process for the prosecution to present false evidence, *Napue v. Illinois*, *Giles v. Maryland*. Habeas relief can be granted based on these clearly established U.S. Supreme Court cases. In *Hayes v. Brown*, 399 F.3d 972 (2005), a case decided under AEDPA, the Ninth Circuit relied on *Napue, Alcorta v. Texas*, 355 U.S. 28, 78 S. Ct. 103, 2 L. Ed. 2d 9 (1957), and *Pyle v. Kansas*, 317 U.S. 213, 63 S. Ct. 177, 87 L. Ed. 214 (1942) (prosecutor has a duty to correct false evidence once presented) in holding that, where the prosecution makes a bargain with witness' attorney to dismiss charges after witness has testified but does not tell the witness about the deal, and where the witness thereafter testifies honestly, but falsely, that he has not been promised any benefits for his testimony, the prosecutor has presented false evidence in violation of the petitioner's right to due process. This court does not have to rule that every instance of the prosecution's use of inconsistent theories in successive trials would violate due process in order to rule that the particular use of inconsistent theories presented here violated the prosecution's conduct here violated its duty not to present false evidence under *Napue v. Illinois* and deprived petitioner of a fair trial under *Turner v. Louisiana*. Here, the prosecutor did more than simply present inconsistent factual theories concerning the gunman's identity. In petitioner's trial, the prosecutor actively set out to suppress any evidence that someone other than petitioner was the gunman, as Waxler would have testified, even though the prosecution had presented Waxler as their witness in Gordon's trial. Having induced the defense not to call Waxler, the prosecutor than took advantage of their suppression of Waxler's testimony to urge the jury to believe Flanagan's testimony that petitioner was the gunman. Just as the prosecution in *Hayes* prevented their witness from testifying truthfully that he had received a benefit for his testimony by not informing the witness of that fact, the prosecution prevented the jury from hearing testimony that they had previously

presented as truthful – that Gordon had admitted to being the gunman, instead presenting

Flanagan's contradictory testimony that petitioner was the gunman.

### 4. Defense counsel was ineffective in failing to object, based on *Crawford v. Washington,* to the trial court's ruling that the prosecutor could introduce Gordon's prior recorded testimony accusing appellant of the crime if Waxler testified, and in failing to call Waxler.

As previously noted, Waxler, a jailhouse informant, had testified at Gordon's trial that

Gordon had confessed to him that Gordon was the gunman. Waxler's testimony not only

contradicted Flanagan's identification of appellant as the gunman, but by doing so, undermined

Flanagan's testimony. When defense counsel proposed to call Waxler as a witness, the trial court

granted the prosecutor's request that he be allowed to introduce Gordon's trial testimony that

appellant had been the gunman. Defense counsel failed to object on the grounds that Gordon's

prior recorded testimony was barred as "testimonial hearsay" under *Crawford v. Washington*,

which had been decided over a year before petitioner's trial. Instead, defense counsel decided

not to call *Waxler*.

The magistrate agreed that trial counsel's failure to object on *Crawford* grounds was at

least presumptively ineffective, and found the Court of Appeal's determination of the facts

unreasonable, thus subjecting petitioner's claim of ineffective assistance to de novo review.

However, the magistrate recommends the denial of this claim because he believes that Waxler's

testimony would have made no difference in the outcome, finding it "cumulative" with

testimony of another defense witness, Raines. Raines, however, had testified that Flanagan told

him in jail that petitioner wasn't present at the robbery - shooting and was a "fall guy." Waxler's

testimony would have been totally different, that Gordon told him in jail that he, Gordon, was

the gunman. The magistrate notes that jailhouse informants are often untruthful and states that

the jury in Gordon's trial found Waxler's testimony "incredible." (Magistrate's

recommendations, p. 28.) There is nothing in the record of this case suggesting that the jury

made any such finding. The most the record shows is that the jury found that the prosecution

had not proven Gordon to be the gunman beyond a reasonable doubt, which at most shows that

they did not find Waxler's testimony to be true beyond a reasonable doubt. Moreover, the

ORIGINAL                                                                    ORIGINAL

1    prosecution had originally presented Waxler's testimony in Gordon's case and therefore

2    implicitly represented it to be true. The magistrate overlooks the fact that the jury would have

3    had before it not merely Waxler's testimony that Gordon admitted being the shooter, but the

4    information that Waxler had testified as a prosecution's witness in Gordon's trial and therefore

5    must have been regarded by the prosecution as credible at the time of Gordon's trial. Waxler's

6    testimony would have had much more weight at petitioner's trial than simply testimony from

7    a second jailhouse informant.

8         The magistrate claims that there was "strong evidence" that petitioner was a participant

9    in the crime, citing the DNA evidence, which didn't show that petitioner was present at the time

10   the crime occurred, and Flanagan's testimony, without any discussion about whether it was

11   corroborated. (Magistrate's Recommendations, p. 28.) Considering that the magistrate has

12   already recommended that this court disregard petitioner's argument that Flanagan's testimony

13   was uncorroborated, it seems inconsistent for the magistrate to advise the court that the DNA

14   findings were independent evidence that petitioner participated in the crime. Just before that,

15   and somewhat contradictorily, the magistrate also mentions that petitioner had other

16   opportunities to undermine Flanagan's testimony, such as Gonzalez' eyewitness testimony that

17   petitioner was not the gunman or a participant and that the actual gunman was a third party,

18   Williams. Whether or not the lack of corroboration of Flanagan's testimony can be separately

19   addressed as a constitutional issue, the fact that Flanagan's testimony was wholly uncorroborated

20   made it other than strong evidence. The jury had been instructed that Flanagan's testimony

21   should be viewed with distrust, and Gonzalez' failure to identify petitioner, although he

22   identified Flanagan, Gordon, and David Jones added to the weakness of the case. The additional

23   fact that the prosecution had presented Waxler at Gordon's trial as a truthful witness would

24   have been enough for a reasonable juror to find that the prosecution had not proven that

25   petitioner was the gunman beyond a reasonable doubt.

26

27

28

**5. Where the state courts have unreasonably determined the facts, petitioner is entitled to an evidentiary hearing on any issue where he has made a colorable case for relief.**

The magistrate has already found that the state Court of Appeal unreasonably determined the facts concerning the ineffectiveness issue. A petitioner is eligible for an evidentiary hearing in federal court if the state court's decision was an unreasonable determination of the facts. *Earp v. Ornoski*, 431 F.3d 1158 at 1166-1167 (9th Cir. 2005), citing *Lockyer v. Andrade*, 538 U.S. 63, 71, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003), and if he has alleged facts that would entitle him to relief if proven, *Earp v. Ornoski*, 431 F.3d at 1167, quoting *Williams v. Woodford*, 384 F.3d 567, 586 (9th Cir. 2004). Thus, unless respondent concedes that there could have been no tactical reason for trial counsel failing to advance the *Crawford* objection or failing to call Waxler, which it hasn't, this court can only resolve the ineffectiveness issue by holding an evidentiary hearing.

> "Where the petitioner establishes a colorable claim for relief and has never been afforded a state or federal hearing on this claim, we must remand to the district court for an evidentiary hearing. *Insyxiengmay* [*v. Morgan*], 403 F.3d [657], 670 [(9th Cir. 2005)]; *Stankewitz v. Woodford*, 365 F.3d 706, 708 (9th Cir. 2004); *Phillips v. Woodford*, 267 F.3d 966, 973 (9th Cir. 2001). In other words, a hearing is required if: '(1) [the defendant] has alleged facts that, if proven, would entitle him to habeas relief, and (2) he did not receive a full and fair opportunity to develop those facts[.]' *Williams v. Woodford*, 384 F.3d 567, 586 (9th Cir. 2004)."

*Earp v. Ornoski,* 431 F.3d at 1167.

**6. Error, considered cumulatively, violated petitioner's due process rights.**

The court considers the prejudicial effect of all errors cumulatively, not in isolation. *Thomas v. Hubbard*, 273 F.3d 1164, 1180 (9th Cir. 2002) (holding that cumulative effect of errors denied defendant of due process of law under the Fourteenth Amendment to the United States Constitution

**7. If the district court dismisses this petition, it should certify all of the above issues as appealable.**

**a. Introduction**

28 U.S.C. section 2253 requires that a petitioner seeking to appeal a denial of a habeas

21

corpus petition apply to the district court for a certificate of appeal ability ("COA"). If the District Court denies a COA, the petitioner may apply to the Ninth Circuit for the same relief. Since Eastern District local rules require the district court to determine whether to issue a certificate of appeal ability upon the denial of a petition, petitioner addresses the issue.,

<b>b. Standard for granting a certificate of appeal ability.</b>

The standard for granting a certificate of appeal ability is set forth by the United States Supreme Court, in *Slack v. McDaniel*, 529 U.S. 473, 120 S.Ct. 1595, 1603, 146 L.Ed.2d 542 (2000). In *Slack* the Court held that a petitioner must make a "substantial showing of the denial of a constitutional right" with respect to each issue sought to be appealed. *Slack*, 120 S.Ct. at 1603.

*Slack* also held that this standard was the same as the one previously applied by the courts before the Antiterrorism and Effective Death Penalty Act (AEDPA) was enacted. The Court wrote:

> "Except for substituting the word 'constitutional' for the word 'federal,' section 2253 is a codification of the CPC standard announced in *Barefoot v. Estelle*, 463 U.S. at 894, 103 S.Ct. 3383. Congress had before it the meaning *Barefoot* had given to the words it selected; and we give the language found in section 2253(c) the meaning ascribed it in *Barefoot*, with due note for the substitution of the word 'constitutional.'"

*Slack,* 120 S.Ct. at 1603.

Under the holding in *Barefoot*, a habeas corpus petitioner can meet the requisite standard by establishing one of the following:

> "[t]hat the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further."

*Lambright v. Stewart*, 220 F.3d 1022, 1025 (9th Cir. 2000) (*en banc*), quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983); *Williams v. Woodford*, 396 F.3d 1059, 1067 (9th Cir. 2005) and *Beardslee v. Brown*, 393 F.3d 899, 901 (9th Cir. 2004), both cases relying on *Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003); *Nardi v. Stewart*, 354 F.3d 1134, 1139 (9th Cir. 2004).

In *Jennings v. Woodford*, 290 F.3d 1006, 1010 (9th Cir. 2002) the court pointed out that

22

ORIGINAL                                                                          ORIGINAL

"The 'substantial showing' standard for a COA is relatively low and is the same as the prior standard for issuance of a CPC apart from the requirement that the court identify specific appealable issues."

The Ninth Circuit has held that a court considering an application for COA must resolve any doubts about the propriety of a COA in the petitioner's favor. *Lambright v. Stewart*, 220 F.3d at 1025, *Jennings v. Woodford, id.*, *Petrocelli v. Angelone*, 248 F.3d 877, 884 (9th Cir.2001) (*en banc*).

While it is generally accepted that the purpose of a COA is to serve as a filter to prevent the unwarranted expenditure of judicial resources on frivolous issues it is equally understood that a COA must be applied liberally. In *Lambright* the Court stated that a COA is:

> "[a] gatekeeping mechanism that prevents [the court] from devoting judicial resources on frivolous issues while at the same time affording habeas petitioners an opportunity to persuade us through full briefing and argument of the potential merit of issues that may appear, at first glance, to lack merit."

*Lambright v. Stewart, id.* See also *Van Pilon v. Reed*, 799 F.2d 1332, 1335 (9th Cir. 1986).

*Lambright* also highlighted the reduced standard for a COA. The Court wrote:

> "At this preliminary stage, we must be careful to avoid conflating the standard for gaining permission to appeal with the standard for obtaining a writ of *habeas corpus*. Indeed, the Supreme Court has cautioned that, in examining a petitioner's application to appeal from the denial of a *habeas corpus* petition, 'obviously the petitioner need not show that he should prevail on the merits. He has already failed in that endeavor.' *Barefoot*, 463 U.S. at 893 n. 4, 103 S.Ct. 3383 (internal quotation marks omitted); see also *Harris v. Vasquez*, 901 F.2d 724, 725 (9th Cir.1990) (Order of Noonan, J.) (Petitioner must make 'a substantial showing of the denial of a federal right. This standard does not mean that the petitioner show [sic] that he will prevail on the merits.'). *Id.*"

In *Beardslee v. Brown*, 393 F.3d at 901-902 (9th Cir. 2004), citing *Miller-El v. Cockrell*, 537 U.S. 322 at 336-337, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003), the court wrote:

> "The COA ruling is not, however, an 'adjudication of the actual merits of petitioner's claim. . . .' Indeed, as the Supreme Court has cautioned us: 'This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims. In fact, the statute forbids it.'"

In *Miller-El v. Cockrell*, 537 U.S. at 337-338, the Supreme Court emphasized that a COA did not require a showing of eventual success in order for it to be granted. The Court wrote:

> ". . . our opinion in *Slack* held that a COA does not require a showing that the

23

appeal will succeed. Accordingly, a court of appeals should not decline the application for a COA merely because it believes the applicant will not demonstrate an entitlement to relief. The holding in *Slack* would mean very little if appellate review were denied because the prisoner did not convince a judge, or, for that matter, three judges, that he or she would prevail. It is consistent with section 2253 that a COA will issue in some instances where there is no certainty of ultimate relief. . . . We do not require petitioner to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus. Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail."

The clear conclusion to be drawn from the foregoing case law is that a COA must be granted unless the claims are "frivolous", or "utterly without merit." *Lambright v. Stewart*, *id.* and *Silva v. Woodford*, 279 F.3d 825, 833 (9th Cir. 2002), both opinions quoting *Jefferson v. Welborn*, 222 F.3d 286, 289 (7th Cir. 2000).

### c. Argument

**(1) Whether *Swarthout v. Cooke* bars this court from reaching the corroboration issue under the due process clause.**

This is the most obvious issue that would be "debatable among jurists of reason." The magistrate proposes that this court treat a published opinion of the Ninth Circuit, *Laboa v. Calderon*, as having been "effectively overruled" by the U.S. Supreme Court's decision in *Swarthout v. Cooke*. No published decision of the Ninth Circuit has even hinted that *Swarthout v. Cooke* must be interpreted as barring any due process claim based on an arbitrary deprivation of a state law right, as the magistrate would have it. Instead, published opinions have assumed *Swarthout* states the rule that federal courts may not review state parole decisions for their substance and not a general rule. The magistrate's interpretation suggests that this court would have to assume that *Hicks v. Oklahoma*, on which *Laboa v. Calderon* was based, would have been "effectively overruled" by *Swarthout*, along with a number of Ninth Circuit published decisions listed in footnote 2, page 5 of these objections. The principle that an unfair trial can independently violate the due process clause even if the errors do not involve other federal constitutional rights is long-standing and predates Supreme Court decisions that the due process clause of the Fourteenth Amendment selectively incorporates various provisions the Bill of Rights. Reasonable jurists might disagree that *Swarthout*, which involved review of an

administrative action rather than error at a criminal trial, actually has the sweeping effect that the magistrate believes it has and would bar any generic claim of an unfair trial that was not based on violation of specific rights other than due process.

**(2) Whether petitioner was arbitrarily deprived of his right not to be convicted solely on the uncorroborated testimony of an accomplice within the meaning of *Laboa v. Calderon* and *Hicks v. Oklahoma*.**

By failing to analyze the corroboration issue, the magistrate has not given the court any guidance on whether petitioner was "arbitrarily deprived" of this right under section 1111. Assuming that this court can reach the issue, it appears that reasonable jurists could find that the evidence cited by the Court of Appeals as "corroboration" of Flanagan's testimony either did not place petitioner at the scene of the crime or depended on Flanagan's testimony for doing so and thus find that Flanagan's testimony was completely uncorroborated. While jurists of reason might not conclude that every violation of section 1111 would be an "arbitrary" deprivation of a defendant's rights under that section, such jurists of reason could conclude that given the facts of this case, which include the eyewitness Gonzalez' testimony that petitioner was not the gunman or a participant and that the gunman was an uncharged individual, Williams, whose picture had been found by the police on film in a camera found in the robber's car, petitioner was indeed arbitrarily deprived of his rights under section 1111.

**(3) Whether the flight instruction violated petitioner's right to due process.**

For the same reasons as in the previous section, jurists of reason could conclude that the flight instruction arbitrarily deprived petitioner of his rights under section 1111, especially since to rule otherwise would allow the prosecution to bootstrap the corroboration required by section 1111. It is likely that accomplices would very often testify that a defendant had fled the scene of the crime. If this was an exception to section 1111, the section would be meaningless in most criminal prosecutions.

**(4) Whether the prosecution's conduct in first trying Gordon as the gunman based on Waxler's testimony, then trying petitioner as the gunman and blocking Waxler's testimony that Gordon had admitted being the gunman violated the prosecution's duty not to present false evidence under *Napue v. Illinois*.**

Based on the facts of the two trials, which included not only advancing inconsistent

1   factual theories but successfully blocking the defense from the benefit of Waxler's testimony,

2   which the prosecution had presented as truthful in Gordon's trial, jurists of reason could

3   conclude that the prosecutor, in effect, presented false evidence in violation of his due process

4   duty under *Napue v. Illinois*.

5   **(5) Whether defense counsel's failure to object to the trial court's ruling**
    **that it would allow introduction of Gordon's trial testimony on Crawford**

6   **grounds and failure to call Waxler was ineffective and prejudicial.**

7   The magistrate has conceded that the Court of Appeal unreasonably determined the facts

8   of petitioner's ineffectiveness claim, that the claim was thus reviewable de novo by the federal

9   court, and that defense counsel's failure to raise the *Crawford* objection was at least

10  presumptively ineffective. The magistrate relies on a prejudice analysis alone to recommend

11  denial of this claim. Whether the lack of Waxler's testimony was prejudicial beyond a reasonable

12  doubt depends on the analysis of the weight of various items of evidence presented at trial, a

13  subject on which jurists of reason can often disagree. For the reasons already stated in these

14  objections, this court should grant a certificate of appeal ability on this issue.

15  **(6) Evidentiary hearing on the ineffectiveness issue.**

16  If this court grants a certificate of appeal ability on the ineffectiveness issue, given the

17  magistrate's opinion that the Court of Appeal unreasonably determined the facts of that claim,

18  this court must also grant an certificate of appeal ability on the issue of whether the district court

19  must hold an evidentiary hearing.

20  **(7) Cumulative error.**

21  If the court grants a certificate of appeal ability on more than one issue presented, the

22  court must also allow the issue of cumulative error to be appealed as well.

23  **8. Conclusion**

24  The court should not follow the magistrate's recommendations but should grant relief.

25  Granting relief on the *Laboa v. Calderon* issues such as would render the need for an evidentiary

26  hearing on the ineffectiveness

27

28

1     Dated:  Oakland, California, Friday, April 6, 2012.

2

3

4

5                                        /s/ Paul McCarthy

6                                        **Robert J. Beles**
                                         **Paul McCarthy**
7                                        Attorneys for *Appellant STEVEN JONES*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Objections to Magistrate's Order, Findings and Recommendations

ORIGINAL                                                ORIGINAL

# PROOF OF SERVICE

I, the undersigned, depose and state: I reside or do business within the County of Alameda. I am eighteen years of age or older and not a party to this action. My business address is 1 Kaiser Plaza, Suite 2300, Oakland, CA 94612-3642.

On Friday, April 6, 2012, I served the following documents:

**Objections to Magistrate's Order, Findings and Recommendations**

I served the following persons by ☑ U.S. mail ❑ FAX ❑ personal delivery:

Catherine Chatman                          Steven Jones CDC F-23851
Attorney General's Office for the State of  High Desert State Prison
California                                  P.O. Box 3030, B-2 139 Upper
1300 I Street                               Susanville, CA 96127-3030
P.O. Box 944255
Sacramento, CA 94244-2550
(916) 324-5364
Fax: (916) 324-2960
Email: catherine.chatman@doj.ca.gov

Attorney for Respondent

I declare under penalty of perjury that the above is true. Executed in Oakland, California on Friday, April 6, 2012.

s/ Paul McCarthy